IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S., Minor Child Through Next Best Friend Marisala Shihadeh, et al. | : : : | CIVIL ACTION |
| v. | : : | NO.  11-5857 |
| MARPLE NEWTOWN SCHOOL DISTRICT, et al. | : : : : | |

O'NEILL, J.                                          FEBRUARY 14, 2012

**MEMORANDUM**

        Plaintiffs M.S. and her parents have filed suit against defendants the Marple Newtown

School District and the Marple Newtown Board of School Directors, alleging that defendants

violated the Rehabilitation Act and the Americans with Disabilities Act by failing to

accommodate M.S.'s educational needs and by retaliating against M.S. and her parents.  I now

have before me defendants' motion to dismiss and plaintiffs' opposition thereto.  For the reasons

that follow I will grant defendants' motion.

**BACKGROUND**

        Plaintiffs allege the following facts in their Complaint.  M.S. attended middle school in

the Marple Newtown School District.  Compl. ¶ 7.  When M.S. was in the eighth grade, the

School District identified her has a student with a disability and entered into an agreement

specifying M.S.'s particular educational needs.  Id. ¶ 8.  During the same school year, in

November of 2007, M.S.'s sister was molested by B.C., a minor who lived near M.S.'s family.

Id. ¶ 9.  B.C. was arrested in June of 2008 and convicted two months later.  Id. ¶ 11.  The

families of M.S. and B.C. continued to live near each other and tensions between them rose "to a

fever pitch."  Id. ¶ 12.

M.S. started high school in September of 2008.  Id. ¶ 16.  Around that time, M.S.'s mother learned that B.C. would be attending the same school as M.S. and that B.C.'s brother, J.C., would be in the same class as M.S.  Id. ¶ 17.  The presence of B.C. and J.C. reminded M.S. of her sister's molestation and of the animosity between the two families.  Id. ¶ 15.  Additionally, J.C. harassed M.S. by "staring, leering" and engaging in other disruptive behavior.  Id. ¶ 21.  B.C. harassed M.S. by "point[ing] cameras at" her in school.  Id.  M.S.'s academic performance declined and she experienced disciplinary problems at school.  Id. ¶ 24.

Starting around August of 2008, M.S.'s mother attempted to persuade school officials to separate M.S. from J.C. and B.C.  Id. ¶ 22.  She also related her concerns to a local newspaper, who published a story on the situation in April of 2009.  Id.  But these efforts failed:  when M.S. started the tenth grade, she was again placed in the same class as J.C.  Id. ¶ 26.  She continued to experience academic and disciplinary problems.  Id. ¶ 27.  A psychotherapist diagnosed M.S. with "anxiety disorder and post-traumatic stress syndrome" and recommended that she be separated from J.C.  Id. ¶ 28.  The School District ignored this recommendation and kept M.S. and J.C. in the same class.  Id. ¶ 30.

M.S. started the eleventh grade in September of 2010 and was again assigned to the same class as J.C.  Id. ¶¶ 31-32.  M.S.'s mother continued trying to convince the School District to separate M.S. and J.C., but to no avail.  Id. ¶ 35.  M.S.'s physician recommended that M.S. receive homebound instruction in order to avoid J.C.  Id. ¶ 36.  On December 20, 2010, M.S. "became hysterical because of the situation" and at that point the School District agreed to provide homebound instruction starting the following month.  Id. ¶ 37.

At some unspecified time, M.S.'s mother filed complaints with the Marple Newtown

Board of School Directors.  Id. ¶ 38.  The Board referred the complaints to the Delaware County

Solicitor, who hired an outside law firm to investigate the matter.  Id. ¶ 39.  The Solicitor's wife

worked at that firm and "played a major role in" the investigation.  Id. ¶ 40.  Without

interviewing M.S., M.S.'s mother, J.C. or B.C., the law firm cleared the School District and the

Board of any wrongdoing.  Id. ¶ 42.  The firm's report, which casts M.S.'s mother "in a bad

light," was sent to J.C., B.C. and certain unidentified individuals "who had no need to know

about" the details of the investigation.  Id. ¶ 56.

The Complaint contains three causes of action.  The first is for harassment in violation of

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Id. ¶¶ 43-52.  The second is for

retaliation in violation of the same statute.  Id. ¶¶ 53-61.  The third alleges harassment and

retaliation in violation of Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132.

Plaintiffs seek damages, attorney fees and costs and expert witness fees and costs.  Id. ¶¶ 52, 61

& 65.  Additionally, they seek injunctive relief for their claims under the Rehabilitation Act.  Id.

¶ 52 & 61.

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) or for a

more definite statement under Rule 12(e).  Defendants argue that the Complaint fails to state a

claim and that the Individuals with Disabilities Education Act[1] requires plaintiffs to exhaust

administrative remedies prior to filing suit in federal court.

## STANDARD OF REVIEW

Defendants proceed under Rule 12(b)(6).  But the IDEA's exhaustion requirement is

---

[1]   As I explain further below, the IDEA includes a provision that generally requires a plaintiff to exhaust administrative remedies whenever he or she seeks relief that is available under the IDEA.

"jurisdictional in nature." W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007). If plaintiffs were required to exhaust and failed to do so, the Court would lack subject matter jurisdiction and I would have to dismiss the action under Rule 12(b)(1).

Although the parties devote their briefs to arguing whether the Complaint states a claim upon which relief can be granted, they need not file supplemental briefs addressing whether I must dismiss the Complaint for lack of subject matter jurisdiction. Instead, I will simply construe defendants' motion as a facial attack on the Complaint under Rule 12(b)(1). Under this approach, I "accept as true . . . the plaintiff's factual allegations." Petruska v. Gannon Univ., 462 F.3d 294, 299 (3d Cir. 2006). In this sense, "the facial attack [under Rule 12(b)(1)] . . . offer[s] similar safeguards to the plaintiff [as a motion under Rule 12(b)(6)]." Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir.1977). See also Falzett v. Pocono Mountain Sch. Dist., 150 F. Supp. 2d 699, 701-02 (M.D. Pa. 2001) (construing a Rule 12(b)(6) motion to dismiss IDEA claim for failure to exhaust as a facial challenge to subject matter jurisdiction under Rule 12(b)(1)). Accordingly, I must determine "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of" this Court. Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

DISCUSSION

I.      Failure to Exhaust

Although plaintiffs seek relief exclusively under the Rehabilitation Act and the ADA, a third statute is relevant to the exhaustion analysis. The IDEA, 20 U.S.C. § 1400 et seq., "requires States that receive federal funding to provide a free appropriate public education . . . to all

disabled students." <u>Ferren C. v. Sch. Dist. of Phila.</u>, 612 F.3d 712, 717 (3d Cir. 2010).

"Individuals who believe that their rights under the IDEA have been violated are permitted to

bring a civil action in federal court." <u>Id.</u>

The IDEA includes a provision that generally requires administrative exhaustion in any

case where a plaintiff seeks a remedy that is also available under the IDEA.  The statute provides

that

> [n]othing in this chapter shall be construed to restrict or limit the
> rights, procedures, and remedies available under the Constitution,
> the Americans with Disabilities Act of 1990, title V of the
> Rehabilitation Act of 1973, or other Federal laws protecting the
> rights of children with disabilities, except that before the filing of a
> civil action under such laws seeking relief that is also available
> under this subchapter, the procedures under subsections (f) and (g)
> shall be exhausted to the same extent as would be required had the
> action been brought under this subchapter.

20 U.S.C. § 1415(l) (citations omitted).  "This provision bars plaintiffs from circumventing

IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and

repackaging them as claims under some other statute – e.g., . . . section 504 of the Rehabilitation

Act[] or the ADA." <u>Jeremy H. v. Mount Lebanon Sch. Dist.</u>, 95 F.3d 272, 281 (3d Cir. 1996).

The IDEA's exhaustion requirement is not, however, absolute.  An aggrieved party need

not resort to the administrative process "(1) where exhaustion would be futile or inadequate; (2)

where the issue presented is purely a legal question; (3) where the administrative agency cannot

grant relief; and (4) when exhaustion would work severe or irreparable harm upon a litigant."

<u>Beth Y. v. Carroll</u>, 87 F.3d 80, 88-89 (3d Cir. 1996) (citations and internal quotation marks

omitted).

Nowhere does the Complaint allege that plaintiffs exhausted their administrative

remedies.  But plaintiffs argue that the futility exception applies to the present case because they

seek relief that they cannot obtain administratively.  It is true that plaintiffs seek compensatory

damages, a remedy that is not available under the IDEA.  See Chambers v. Sch. Dist. of Phila.

Bd. of Educ., 587 F.3d 176, 185-86 (3d Cir. 2009).  But plaintiffs' Rehabilitation Act claims also

seek injunctive relief.  Unlike compensatory damages, injunctive relief is available through the

IDEA's administrative process.  See M.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, 2006

WL 2561242, at *7 (E.D. Pa. Sept. 1, 2006).  When a claimant seeks relief that is available

through the administrative process, exhaustion is required.  See Falzett, 150 F. Supp. 2d at 706

("[R]ecourse to IDEA administrative procedures is required prior to the filing of an action

seeking to vindicate the educational rights of a handicapped child where the complaint seeks

relief that is available through the administrative process.").  Because plaintiffs do not allege

exhaustion, the Court lacks subject matter jurisdiction.

Plaintiffs' brief in opposition to defendants' motion to dismiss, however, states that

plaintiffs withdraw their claim for injunctive relief in the event I deem that remedy available

under the IDEA.  Dkt. No. 7 at 10.  Accordingly, I will grant defendants' motion to dismiss

without prejudice because an amended complaint that abandons a claim for injunctive relief

would not be futile.

II.     Rule 12(b)(6) Issues Concerning Harassment Claims

Although I am dismissing the Complaint due to its jurisdictional defects, I write further to

address other issues that would have made the Complaint's harassment claims vulnerable to a

motion to dismiss under Rule 12(b)(6).[2]  Plaintiffs' claims are under the Rehabilitation Act and

the ADA.  The Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The ADA

includes a similar provision providing that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.  Under both acts, a "disability" means "(A) a physical or mental

impairment that substantially limits one or more major life activities of such individual; (B) a

record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C.

§ 12102(1).

        The Court of Appeals has explained that the same standard governs liability under the

Rehabilitation Act and the ADA.  See McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr., 62

F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the

Disabilities Act, the substantive standards for determining liability are the same.").  The parties,

however, disagree on the standard that governs harassment claims under these acts.  According to

the School District, plaintiffs must establish that M.S. "(1) has a disability; (2) was otherwise

qualified to participate in a school program; and (3) was denied the benefits of the program or

_____

        [2]      To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must allege facts
that are "enough to raise a right to relief above the speculative level on the assumption that all of
the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007) (citations omitted).

was otherwise subject to discrimination because of her disability." Dkt. No. 5 at 15-16.  This is

the standard that generally governs claims against schools under the Rehabilitation Act and the

ADA.  See Chambers, 587 F.3d at 189.

Plaintiffs, on the other hand, argue that harassment claims under these acts are governed

by the same standards that govern actions brought under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq.  Dkt. No. 7 at 15.  Under that standard, plaintiffs must prove

> (1) that [M.S.] is a member of a protected group, (2) that she has
> been subject to unwelcome harassment, (3) that the harassment is
> based on a protected characteristic, her disability, (4) that the
> harassment is sufficiently severe or pervasive that it alters the
> conditions of her education and creates an abusive educational
> environment, and (5) that there is a basis for institutional liability.

Derrick F. v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 309 (M.D. Pa. 2008) (internal

quotation marks omitted).

At this stage, however, I need not decide which standard governs because plaintiffs do not

allege sufficient facts under either standard.  Plaintiffs must establish that M.S. has a "disability,"

as that term is statutorily defined, that was at the root of the harassment against her.  But the

Complaint fails to specify the disability relevant to the alleged mistreatment of M.S.  Plaintiffs

allege that the School District identified M.S. as a student with a disability while she was in

eighth grade, but they do not identify that disability.  At some unspecified time after being in the

same classroom with J.C., M.S. was allegedly diagnosed with anxiety disorder and post-

traumatic stress syndrome.  But the Complaint does not specify what disability is pertinent to the

School District's allegedly unlawful conduct:  anxiety disorder, post-traumatic stress syndrome,

the unnamed disability with which M.S. was diagnosed as an eighth grader, some combination of

these conditions or something else altogether.  An amended complaint should clearly identify the disability or disabilities at the root of the alleged harassment against M.S.

Additionally, under plaintiffs' and defendants' proposed standards, plaintiffs must establish a nexus between the disability and the harassment.  See Derrick F., 586 F. Supp. 2d at 309 (requiring that "the harassment [be] based on . . . [a plaintiff's] disability"); Chambers, 587 F.3d at 189 (requiring that plaintiff be "subject to discrimination because of her disability").  The Complaint fails to allege such a nexus.  Instead of alleging disability-based harassment, plaintiffs appear to allege that J.C. and B.C. harassed M.S. because of the tensions between the children's families.  See Compl. ¶¶ 15 ("M.S. became traumatized in the presence of B.C. . . . and also in the presence of J.C. because J.C. brought up the pain and trauma of her sister's victimization and the hatred between the two families."); 21 ("J.C. harassed M.S. in class . . . and re-traumatized her regarding her sister's molestation and the hatred between the two families.").  Count One of the Complaint asserts that the harassment was "based upon M.S.'s disability," Compl. ¶ 46., but the Complaint contains no facts that support this assertion.  An amended complaint will not survive a motion to dismiss if it does not plead facts showing that the harassment of M.S. was due to her disability.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (noting that "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts").

In sum, the amended complaint should identify the disability that is the source of the harassment of M.S. and allege facts showing a nexus between that disability and M.S.'s mistreatment.

An appropriate Order follows.