IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S., Minor Child Through Next Best Friend Marisala Shihadeh, et al. | : : : : : : : | CIVIL ACTION<br><br>NO.  11-5857 |
| v. | | |
| MARPLE NEWTOWN SCHOOL DISTRICT, et al. | | |

O'NEILL, J.                                                                                           SEPTEMBER 4, 2012

## MEMORANDUM

Plaintiffs M.S. and her parents sued defendants Marple Newtown School District and the Marple Newtown School District Board of Directors, alleging violations of the Rehabilitation Act and the Americans with Disabilities Act.  On February 14, 2012 I granted defendants' motion to dismiss plaintiffs' complaint but granted plaintiffs leave to amend.  Plaintiffs subsequently filed an amended complaint and defendants again move to dismiss.  For the following reasons I will deny defendants' motion.

## BACKGROUND

The amended complaint substantially repeats the factual allegations in the original complaint and for clarity's sake I summarize those allegations here.  M.S. attended middle school in the Marple Newtown School District.  Am. Compl. ¶ 7.  In November 2007, while M.S. was in the eighth grade, M.S.'s sister was molested by B.C., a minor who lived near M.S.'s family.  Id. ¶ 8.  This incident traumatized M.S.  Id. ¶ 14.  B.C. was arrested in June 2008 and convicted two months later.  Id. ¶ 11.  The families of M.S. and B.C. continued to live near each other and tensions between them rose "to a fever pitch."  Id. ¶ 12.

M.S. started ninth grade at the Marple Newtown High School in September 2008.  Id.

¶ 16.  M.S.'s mother learned that B.C. would be attending the same school as M.S. and that B.C.'s brother, J.C., would be in the same class as M.S.  Id. ¶ 17.  The presence of B.C. and J.C. reminded M.S. of her sister's molestation and of the animosity between the two families.  Id. ¶ 15.  Additionally, J.C. harassed M.S. by "staring, leering" and engaging in other disruptive behavior.  Id. ¶ 21.  B.C. harassed M.S. by "point[ing] cameras at" her in school.  Id.  M.S.'s academic performance declined and she experienced disciplinary problems at school.  Id. ¶ 24.

Prior to the start of ninth grade, M.S.'s mother attempted to persuade school officials to separate M.S. from J.C. and B.C.  Id. ¶¶ 22.  She also related her concerns to a local newspaper, who published a story on the situation in April 2009.  Id.  Despite these efforts, when M.S. started the tenth grade, she was again placed in the same class as J.C.  Id. ¶ 26.  She continued to experience academic and disciplinary problems.  Id. ¶ 27.  A psychotherapist diagnosed M.S. with "anxiety disorder and post-traumatic stress syndrome" and recommended to the School District's guidance counselor that M.S. be placed in a different class.  Id. ¶¶ 28-29.  The School District ignored this recommendation and kept M.S. and J.C. in the same class.  Id. ¶ 30.

M.S. started the eleventh grade in September of 2010 and was again assigned to the same class as J.C.  Id. ¶¶ 31-32.  "[T]o escape classes with J.C.," M.S. enrolled in a vocational program that took her outside the high school building three periods per day.  Id. ¶¶ 33-34.  But that program "did not work out well and M.S. returned to regular classes in November, 2010."  Id. ¶ 33.  M.S.'s mother continued trying to convince the School District to separate M.S. and J.C. but to no avail.  Id. ¶ 35.  M.S.'s physician recommended that M.S. receive homebound instruction in order to avoid J.C.  Id. ¶ 36.  On December 20, 2010, M.S. "became hysterical because of the situation" and at that point the School District agreed to provide homebound

instruction starting the following month.  Id. ¶ 37.

At some unspecified time, M.S.'s mother filed discrimination and harassment complaints with the Marple Newtown Board of School Directors.  Id. ¶ 38.  The Board referred the complaints to the Delaware County Solicitor, who hired an outside law firm to investigate the matter.  Id. ¶ 39.  The Solicitor's wife worked at that firm and "conducted . . . or, alternatively played a major role in th[e] investigation."  Id. ¶ 40.  Plaintiffs declined to be interviewed because they did not believe the investigation would be "impartial and objective."  Id. ¶ 41.  J.C. and B.C. also refused to be interviewed.  Id. ¶ 41.1.  The law firm subsequently issued a report that cleared the School District and the Board of any wrongdoing.  Id. ¶ 42.  The firm's report, which casts M.S.'s mother "in a bad light," was sent to J.C., B.C. and certain unidentified individuals "who had no need to know about" the details of the investigation.  Id. ¶ 56.

The amended complaint contains three causes of action.  The first is for "causing/aggravating a disability and/or failure to accommodate same" in violation of Section 504 of the RA, 29 U.S.C. § 794.  Id. ¶¶ 43-52.  The second is for retaliation in violation of the same statute.  Id. ¶¶ 53-61.  The third alleges violation of Section 202 of the ADA, 42 U.S.C. § 12132.  Plaintiffs seek damages, attorney fees and costs and expert witness fees and costs.  Id. ¶¶ 52, 61 & 65.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it

4

has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

## **DISCUSSION**

I.      Discrimination Claims

Plaintiffs assert a claim for discrimination under the RA, which provides in pertinent part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  Plaintiffs also bring a discrimination claim under the ADA, which includes a similar provision stating that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Defendants attack the discrimination claims on two grounds.  First, they argue that the amended complaint fails to allege that M.S. has a "disability" as that term is used in both acts. Second, defendants argue that the amended complaint does not sufficiently allege that she was discriminated against because of her alleged disability.  I find both arguments unavailing.

First, I cannot conclude that as a matter of law M.S.'s alleged anxiety disorder and post-traumatic stress syndrome do not amount to a qualifying disability under the RA and the ADA. Under both acts a "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  "Major life activities" include "learning." Id. § 12102(2)(A).  The amended complaint alleges that M.S.'s anxiety

disorder and post-traumatic stress syndrome "prevented or interfered with" her ability to learn. Am. Compl. ¶ 44.2. Plaintiffs provide factual support for this claim by alleging that M.S. suffered academic and disciplinary problems while in school. Accordingly, plaintiffs have sufficiently alleged that M.S.'s mental impairment substantially limited a major life activity such that it constitutes a disability under the RA and the ADA.

Defendants assume facts not in the record when they argue that M.S. suffers from "a transitory, situational condition" that does not substantially limit a major life activity. Dkt. No. 13 at ECF p. 20. Discovery may reveal facts showing that M.S.'s condition is not a qualifying disability. In that event, defendants may move for summary judgment on the ground that M.S. does not have a disability. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002) ("[A] temporary, non-chronic impairment of short duration is not a disability covered by the ADA.).

Second, the amended complaint sufficiently alleges that M.S. was discriminated against because of her disability. The Court of Appeals has explained that "when a state fails to provide a disabled child with a free and appropriate education, . . . it . . . violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability." Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007). Accordingly, a plaintiff proves a claim under the RA where "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999), superseded by statute on

other grounds as stated in P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009).

The amended complaint sufficiently alleges each of these elements.  As to the first element, I have already determined that the amended complaint alleges that M.S. has a disability.  As to the second and third elements, the amended complaint alleges that "M.S. is an otherwise qualified individual" and that she was excluded from a program receiving federal financial assistance.  Am. Compl. ¶¶ 44 & 45.  Finally, the amended complaint alleges that defendants' failure to separate M.S. from J.C. and B.C. denied M.S. the benefits of an educational program.  Id. ¶ 45.  Accordingly, the amended complaint states a claim under the RA.  Moreover, "the substantive standards for determining liability are the same" under the ADA and the RA.  McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 95 (3d Cir. 1995).  Therefore, the amended complaint states a claim under the ADA as well.

II.     Retaliation Claims

Defendants also move to dismiss plaintiffs' retaliation claims under the RA and the ADA.  To prove a retaliation claim under either statute, plaintiffs must establish "(1) that they were engaged in protected activity; (2) that [d]efendants took action adverse to them after or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action."  Dutkevitch v. Wilkes Barre Area Vocational Tech. Sch., No. 09-1041, 2012 WL 112885, at *2 (M.D. Pa. Jan. 12, 2012).  "Protected activities" include "'oppos[ing] any act or practice made unlawful by' the ADA or Rehabilitation Act."  Montanye v. Wissahickon Sch. Dist., 218 Fed. App'x 126, 131 (3d Cir. 2007), quoting ADA's retaliation provision, 42 U.S.C. § 12203(a).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). If both of those methods of proof fail, "the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation." Id. (internal quotation marks omitted).

Plaintiffs allege sufficient facts to survive defendants' motion to dismiss. According to the amended complaint, M.S.'s mother pressed the School District to accommodate M.S.'s educational needs from August 2008 to December 2010. Am. Compl. ¶ 22. M.S.'s mother also complained of harassment and discrimination to the Marple Newtown Board of School Directors. Id. ¶ 38. These are both forms of "protected activity" because opposed practices made unlawful by the ADA or the RA. Plaintiffs allege that defendants took adverse action by sending their investigation report, which contained "private details" concerning M.S. and her sister, to J.C., B.C. and "third parties who had no need to know" about the contents of the report. Id. ¶ 56. Plaintiffs also allege that defendants took adverse action by disciplining M.S. and refusing to separate her from J.C. and B.C. Id. ¶ 59. Although the amended complaint does not specify the exact dates on which defendants took retaliatory action, a trier of fact could infer causation from the alleged sequence of events in which M.S.'s mother complained to the Marple Newtown Board of School Directors, the Board investigated the complaints, and then invaded plaintiffs' privacy by publicizing the investigation report to third parties. Accordingly, I will deny defendants' motion to dismiss plaintiffs' retaliation claims.

An appropriate Order follows.