IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S., minor child through next best friend MARIALISA SHIHADEH, *et al.* | : : : | CIVIL ACTION |
| v. | : : | |
| MARPLE NEWTOWN SCHOOL DISTRICT, *et al.* | : : | NO.  11-5857 |

MEMORANDUM

RESTREPO, J.                                                                                                           JANUARY 5, 2015

Plaintiffs' Amended Complaint (ECF Document 12) alleges claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "RA"),[1] 29 U.S.C. § 794, *see* Pls.' Am. Compl. ¶¶ 43-52, 53-61 (Counts I & II), and the Americans with Disabilities Act ("ADA"),[2] 42 U.S.C. § 12132, *see* Pls.' Am. Compl. ¶¶ 62-65 (Count III).  Defendants, Marple Newtown School District and Marple Newtown Board of School Directors, have filed a Motion for Summary Judgment (Doc. 60), and plaintiffs have filed a Response in opposition thereto.[3]  In addition, the parties

---

[1] Section 504 of the RA provides, in part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." *See Wright v. Carroll County Bd. of Ed.*, 2013 WL 4525309, *12 (D. Md. 2013) (quoting 29 U.S.C. § 794(a)).

[2] Title II of the ADA provides, in part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See Wright*, 2013 WL 4525309, at *12 (quoting 42 U.S.C. § 12132).

[3] Although this case was originally assigned to the calendar of the Hon. Thomas N. O'Neill, Jr., it was reassigned to me.

were ordered to file respective briefs addressing the issue of whether, in light of *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014), this case should be dismissed for lack of subject matter jurisdiction because of a failure to exhaust administrative remedies. Defendants request that the Court dismiss the case for lack of subject matter jurisdiction in light of *Batchelor*, *see* Defs.' Br. (Doc. 91) at 3, and plaintiffs urge the Court not to dismiss the case despite *Batchelor*, *see* Pl.'s Br. Re: Exhaustion (Doc. 92). For the reasons which follow, the case is dismissed for lack of subject matter jurisdiction. Furthermore, as explained below, even assuming *arguendo* the Court had jurisdiction, summary judgment in favor of defendants would be warranted.

## 1. BACKGROUND

At the time plaintiffs initiated this lawsuit, M.S. was a 17-year old minor who was beginning her senior year in high school.[4] Plaintiffs' Amended Complaint alleges that M.S. was traumatized in or about November 2007, during M.S.'s eighth grade academic year, when her sister was sexually assaulted by B.C., who was a student at the high school which M.S. eventually attended.[5] *See* Pls.' Am. Compl. ¶ 8; Pl.'s Br. in Opp. to Defs.' Summ. J. Mot. (Doc. 71) (hereinafter cited as "Pls.' Br.") at 3-4. Plaintiffs state that B.C. and his family "lived just a few doors away" from M.S.'s family and that the two families were "close friends and neighbors . . . before B.C. sexually assaulted [M.S.'s sister]." *Id.*

---

[4]M.S. was born Feb. 20, 1994, *see* Pls.' Am. Compl. ¶ 1, and plaintiffs filed their original Complaint on Sept. 16, 2011.

[5]Plaintiffs allege that B.C. was arrested in June 2008 and was "eventually prosecuted and convicted (adjudicated) of these crimes in or about August 2008." *See* Pls.' Am. Compl. ¶ 11.

Plaintiffs further indicate that "[a]fter the assaults, the families became estranged enemies which resulted in numerous confrontations leading to police involvement and a lawsuit between the families in state court." *Id.* (emph. omitted). Plaintiffs claim that: "These confrontations consisted of frequent incidents of intimidation: for example, [B.C.'s] family members would drive slowly by M.S.'s house and 'stare' at her and her family; [B.C.'s] family members would confront M.S.'s family members by snapping photographs of them without permission; [B.C.'s] family members would 'stare them down,' give them the 'evil eye'; make faces at them." *Id.* According to plaintiffs, "[t]his type of harassment behavior continued in the high school." *Id.* at 5.

"M.S. became traumatized in the presence of B.C., her sister's molester, and also in the presence of J.C. (B.C.'s minor brother) because J.C. brought up the pain and trauma of her sister's victimization and the hatred between the two families." *See* Pls.' Am. Compl. ¶ 15 (parenthetical added). "J.C. became estranged from M.S. and engaged in hostile behavior towards M.S. during confrontations in their neighborhood." *Id.* ¶ 13. As plaintiffs describe it, M.S. "[e]ndured the resulting estrangement and hatred between the two families." *Id.* M.S. also "endured a rape and a car accident at [the] end of her first year of high school." *Id.*

Plaintiffs state that "M.S. began ninth grade with J.C. in her classes and B.C. in the same building" and that "M.S.'s school performance deteriorated – she started cutting classes and receiving detentions." *Id.* ¶¶ 18-19. In particular, plaintiffs claim that "M.S.'s ability to function in the school and her ability to learn was substantially harmed by the presence of J.C. in her classes and the presence of B.C. . . . in the building." *Id.* ¶ 20. Plaintiffs further claim that "M.S.'s tenth grade school performance deteriorated further with low grades, temporary

suspensions, and detentions." *Id.* ¶ 27.

According to plaintiffs, M.S.' psychotherapist diagnosed her with anxiety disorder and post-traumatic stress syndrome on or about August 2009 and the psychotherapist "communicated directly with the district's guidance counselor" toward the end of M.S.'s sophomore year "on or about March 2010, and informed [her] of M.S.'s diagnoses and disability and the necessity for a change in class." *Id.* ¶¶ 28-29. Plaintiffs state that M.S.'s "last day at the high school was December 20, 2010, when M.S. became hysterical because of the situation" and "[t]he district agreed to provide homebound instruction starting January, 2011." *Id.* ¶ 37.

Plaintiffs' Amended Complaint alleges three Counts: (1) "Causing/Aggravating a Disability and/or Failure to Accommodate Same" under Section 504 (Count I), *id.* ¶¶ 43-52; (2) "Retaliation Against Parents of M.S. and M.S." under Section 504 (Count II), *id.* ¶¶ 53-61; and (3) Violation of the ADA (Count III), *id.* ¶¶ 62-65. Plaintiffs' claims include allegations that "defendants' conduct prevented or interfered with the ability of M.S. to learn or access an appropriate education," her "disability substantially limited one or more of the major life activities of M.S., *i.e.*, the ability to learn in school," and defendants "interfered with, discriminated against, or denied M.S.' participation in or receipt of benefits, services, or opportunities in the school's programs." *See id.* ¶¶ 44.2-46.

## 2. LEGAL STANDARD

The same standard of review applies whether the Court raises subject matter jurisdiction *sua sponte* or a party requests dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). *Thompson v. Martinez*, 2012 WL 2990646, *2 (D. N.J. 2012) (citing *Orthopedic Specialists of*

*N.J. v. Horizon Blue Cross/Blue Shield of N.J.*, 518 F. Supp.2d 128, 131-32 (D. N.J. 2007)).  In that there is no material factual dispute with regard to the Rule 12(b)(1) issue, and the parties do not dispute that plaintiffs did not attempt to exhaust administrative remedies, the Court "review[s] only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."  *Id.* at 271 (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (internal quotation marks omitted)).  Thus, for purposes of this inquiry, all factual allegations in the Amended Complaint must be accepted as true, and disposition of this matter becomes a purely legal question.  *Thompson*, 2012 WL 2990646, at *2 (citing *Orthopedic Specialists of N.J.*, 518 F. Supp.2d at 131-32).  In reviewing a facial challenge, the Court must "consider the allegations of the Complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.* (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)) (internal quotation marks omitted).

   Defendants' motion requests summary judgment under Rule 56.[6]  Summary judgment is appropriate where "the moving party has established 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014) (quoting *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013); Fed. R. Civ. P. 56(a)).  In reviewing a summary judgment motion, all facts should be viewed "in the light most favorable to the non-moving party" and "all

---

[6]Although defendants request dismissal of this case on jurisdictional grounds, *see* Defs.' Br. (Doc. 91) at 3, they also request that the Court determine the substantive issues and grant summary judgment as alternative relief on the merits "because of the compelling reasons supporting the entry of summary judgment" in defendants' favor.  *Id.* at 2 n.1.

reasonable inferences [should be drawn] in that party's favor." *Id.* (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). In applying this standard, "the non-moving party must overcome [her] own hurdle in order to withstand the motion for summary judgment." *Id.* (citing *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)). The non-moving party must oppose the motion and, in doing so, "may not rest upon the mere allegations or denials of [her] pleadings"; the non-movant's response "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Gans*, 762 F.2d at 341). "[B]are assertions, conclusory allegations[,] or suspicions" will not suffice. *Id.*

### 3. LACK OF SUBJECT MATTER JURISDICTION

"[S]ubject-matter jurisdiction 'can never be forfeited or waived' and courts have a continuing 'independent obligation to determine whether subject-matter jurisdiction exists.'" *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 260 (3d Cir. 2008) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quotation omitted)); *see Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977)) (because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt and "the court can raise *sua sponte* subject-matter jurisdiction concerns"). "If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed." *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997). More specifically, where claims fall within the ambit of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400-1482, and require exhaustion, and further where plaintiffs fail to

satisfy the exhaustion requirement and no exception to the exhaustion requirement applies to the facts presented, the Court must dismiss the claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Batchelor*, 759 F.3d at 269, 281.

The purpose of IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs . . ." *Id.* (quoting 20 U.S.C. § 1400(d)(1)(A)) (parenthetical added). IDEA's administrative process provides parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a [FAPE] to such child. . . ." *Id.* (quoting § 1415(b)(6)(A)). After completing IDEA's administrative process, *i.e.*, exhaustion, IDEA affords "[a]ny party aggrieved by the findings and decisions" made during or pursuant to the impartial due process hearing an opportunity for judicial review. *Id.* (quoting § 1415(i)(2)(A); *Komninos v. Upper Saddle River Bd. of Ed.*, 13 F.3d 775, 778 (3d Cir. 1994)).

In *Batchelor*, our Court of Appeals affirmed the dismissal of the claims raised in the plaintiffs' Complaint, including claims of retaliation in violation of Section 504 and the ADA,[7] for lack of subject matter jurisdiction because of a failure to exhaust administrative remedies. *Batchelor*, 759 F.3d at 281. The Court found that since the plaintiffs' retaliation claims brought

---

[7]The Court held that IDEA's plain language and structure, in addition to the purpose of IDEA's exhaustion requirement and the policy concerns supporting it, dictate that retaliation claims related to the enforcement of rights under IDEA must be exhausted before a court may assert subject matter jurisdiction. *Batchelor*, 759 F.3d at 275. Besides "the mandates of statutory interpretation," there is a "strong policy reason" requiring exhaustion, including that exhaustion serves the purpose of "developing the record for review on appeal," and allowing "the education agencies to apply their expertise and correct their own errors." *Id.*

under Section 504 and the ADA "are related to the provision of FAPE under [IDEA]," they "must be exhausted." *Id.* at 273-74. The Court noted that exhaustion of IDEA's administrative process "is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Id.* at 272 (citing 20 U.S.C. § 1415(l)). "This provision bars plaintiffs from **circumventing** IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute – *e.g.*, section 1983, section 504 of the Rehabilitation Act, or the ADA." *Id.* (quoting *Jeremy H. v. Mt. Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996) (finding plaintiffs properly exhausted ADA and Section 504 Act claims by participating in an IDEA due process hearing)) (emph. added). Thus, determining if IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under IDEA. *Id.* at 273. "Intertwined with this inquiry is whether the claim could have been remedied by IDEA's administrative process." *Id.*

In this case, plaintiffs' Amended Complaint fails to allege exhaustion of administrative remedies, and the parties do not appear to dispute that plaintiffs never attempted to exhaust administrative remedies. Rather, plaintiffs' Amended Complaint alleges: "Exhaustion of administrative remedies is not required to invoke jurisdiction because the administrative agency created by IDEA, 20 U.S.C. [§] 1400, *et seq.*, **cannot grant the relief sought by plaintiffs** and therefore exhaustion would be **futile**." *See* Pls.' Am. Compl. ¶ 6.1 (emph. added).[8] Thus,

---

[8]Setting aside the exceptions to IDEA's exhaustion requirement for the moment, plaintiffs' claims otherwise "fall within the ambit of IDEA." *See Batchelor*, 759 F.3d at 269 (citing § 1415(i)). Plaintiffs claim, for example, that "M.S.'s school performance deteriorated," *see* Pls.' Am. Compl. ¶¶ 18-19, "M.S.'s ability to function in the school and her ability to learn was substantially harmed by the presence of J.C. in her classes and the presence of B.C. . . . in

although plaintiffs' claims fall within the scope of IDEA's exhaustion requirement, plaintiffs allege their claims are exempt because they seek monetary damages, which they claim are unavailable under IDEA, and thus that participating in the administrative process would have been futile. *See, e.g., Batchelor*, 759 F.3d at 276 (identifying the exceptions to IDEA's exhaustion requirement).

  In *Batchelor*, the Court of Appeals specifically denied the plaintiffs' claim that IDEA's exhaustion requirement was inapplicable because the remedies they sought were unavailable under IDEA. *Id.* In particular, the Court found that despite the fact that the plaintiffs sought compensatory damages, which were not available under IDEA, this was "not dispositive . . . for several reasons." *Id.* The Court pointed out that, in addition to compensatory damages, the plaintiffs' Complaint requested reasonable attorneys fees and such other further relief as the court deemed appropriate and that it was therefore "untenable" for the plaintiffs to maintain that all of the remedies they sought were unavailable under IDEA. *Id.* Similarly, in this case, plaintiffs' Amended Complaint requests "compensatory damages, and attorney's fees and costs and expert witness costs and fees and any other relief deemed appropriate," *see* Pls.' Am. Compl. ¶ 52; *see also id.* ¶¶ 61, 65.

---

the building," *id.* ¶ 20, and that "M.S.'s tenth grade school performance deteriorated further with low grades, temporary suspensions, and detentions," *id.* ¶ 27. Plaintiffs' claims include allegations that "defendants' conduct prevented or interfered with the ability of M.S. to learn or access an appropriate education," her "disability substantially limited one or more of the major life activities of M.S., i.e., the ability to learn in school," and "interfered with, discriminated against, or denied M.S.' participation in or receipt of benefits, services, or opportunities in the school's programs." *See, e.g., id.* ¶¶ 44.2-46. As in *Batchelor*, "the plain language of the IDEA required exhaustion here, as there is a logical path to be drawn from [plaintiffs'] claims . . . to [defendants'] failure to provide, and [M.S.'s mother's] effort to obtain for, M.S. 'a free appropriate public education.'" *Id.* at 274-75 (citing § 1415(b)(6)(A)).

Our Court of Appeals further observed that, in reviewing IDEA-related claims, the District Court is not constrained in the relief it is authorized to grant by the remedies sought in plaintiffs' Complaint.  *See Batchelor*, 759 F.3d at 276.  In support, the Court pointed to Second and Seventh Circuit cases.  *Id.* at 276-77 (citing *Charlie F. v. Bd. of Ed. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996), and *Polera v. Bd. of Ed. of the Newburgh Enlarged Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002)).  In *Charlie F.*, for example, although the plaintiff did not bring claims directly under IDEA, the Seventh Circuit still required exhaustion of IDEA's administrative process, emphasizing that parents "**cannot ignore remedies available under IDEA and insist on those of their own devising**; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls."  *Batchelor*, 759 F.3d at 276 (quoting *Charlie F.*, 98 F.3d at 992) (emph. added).  "Rather than being constrained by the remedies sought in the [plaintiffs'] Complaint, . . . IDEA authorized the District Court to grant [plaintiffs] 'such relief as [it] determines is appropriate.'"[9]  *Id.* at 277 (quoting 20 U.S.C. § 1415(i)(2)(C)(iii)).  Indeed, as explained, the relief sought by plaintiffs' Amended Complaint here includes "any other relief deemed appropriate."  *See* Pls.' Am. Compl. ¶¶ 52, 61, 65.

In addition, our Court of Appeals pointed out that even though a monetary award is not available to plaintiffs during the IDEA administrative process as compensatory damages, such an award may nevertheless be granted as reimbursement for certain expenses incurred.  *Batchelor*,

---

[9]The Third Circuit has interpreted this provision "broad[ly]" to include attorneys fees, reimbursement for a private educational placement, and compensatory education.  *Batchelor*, 759 F.3d at 277 (citing *Chambers v. Sch. Dist. of Phila. Bd. of Ed.*, 587 F.3d 176, 185 (3d Cir. 2009) (collecting cases)).

759 F.3d at 277. For example, if parents have paid for a disabled child's education because the public schools were failing to provide a FAPE, the reimbursement of such expenses constitutes appropriate relief under IDEA. *Id.* (citing cases).

Since plaintiffs' claims fall within the ambit of IDEA and require exhaustion, and since no exception to IDEA's exhaustion requirement applies under the facts presented, this Court lacks subject matter jurisdiction of the case. Accordingly, this case must be dismissed.[10] *See id.* at 281; *see also M.A. v. Jersey City Bd. of Ed.*, 2014 WL 6656328, *5 (3d Cir. Nov. 24, 2014) (citing *Batchelor*) (affirming dismissal with prejudice of Section 504 retaliation claim for lack of subject matter jurisdiction due to a failure to exhaust administrative remedies).

### 4. DEFENDANT'S SUMMARY JUDGMENT MOTION

Since the Court lacks subject matter jurisdiction over this case, the merits of plaintiffs' claims may not be reviewed. However, even assuming *arguendo* the Court had jurisdiction, dismissal of plaintiffs' claims due to summary judgment in defendants' favor would be

---

[10]Following the filing of plaintiffs' original Complaint, defendants moved for dismissal on the ground that, among other things, plaintiffs failed to exhaust administrative remedies required by IDEA. While not having the benefit of the recent decision of our Court of Appeals in *Batchelor*, which was issued after this case was reassigned to me, by Memorandum and Order ("M&O") filed Feb. 14, 2012, Judge O'Neill granted defendants' motion to dismiss, and dismissed plaintiffs' claims "[b]ecause plaintiffs [did] not allege exhaustion," and "the Court lacks subject matter jurisdiction." *See* M&O filed 2/14/12 (Doc. 10), at 6. Judge O'Neill "grant[ed] defendants' motion to dismiss without prejudice," indicating that, although plaintiffs' Complaint sought compensatory damages – "a remedy that is not available under IDEA," "an [A]mended [C]omplaint that abandons a claim for injunctive relief would not be futile." *Id.* Although defendants filed a subsequent motion to dismiss following the filing of plaintiffs' Amended Complaint, it does not appear defendants raised therein the issue of subject matter jurisdiction based on failure to exhaust. Therefore, Judge O'Neill's M&O filed Sept. 4, 2014 denying defendants' motion to dismiss plaintiff's Amended Complaint did not address subject matter jurisdiction based on failure to exhaust as it relates to the operative Amended Complaint.

warranted.

To establish claims under the ADA and Section 504, "a plaintiff must demonstrate that (1) [s]he has a disability, or was regarded as having a disability; (2) [s]he was 'otherwise qualified' to participate in school activities; and (3) [s]he was 'denied the benefits of the program or was **otherwise subject to discrimination because of [her] disability**."[11] *D.E.*, 765 F.3d at 269 (citing *Chambers*, 587 F.3d at 189) (footnote omitted) (emph. added). Where, as in this case, a plaintiff seeks, among other things, compensatory damages as a remedy for violations of the RA and the ADA, it is not enough to demonstrate only that the plaintiff has made out the *prima facie* case outlined above; he or she must also demonstrate that the aforementioned discrimination was intentional. *Id.* (citing *S.H.*, 729 F.3d at 261). A showing of deliberate indifference satisfies that standard.[12] *Id.*

Plaintiffs' counsel represented at oral argument that plaintiffs are pursuing ADA and Section 504 claims that defendants were deliberately indifferent, failed to provide a reasonable accommodation, failed to prevent bullying or harassment, failed to provide services in the most integrated setting, and retaliated against plaintiffs for asserting their ADA and Section 504

---

[11]The same standards govern both RA and ADA claims. *D.E.*, 765 F.3d at 269 (citing *Chambers*, 587 F.3d at 189); *see Wright*, 2013 WL 4525309, at *12 (quoting *Halpern v. Wake Forest Univ. Hlth. Sciences*, 669 F.3d 454 (4th Cir. 2012)) (ADA and RA "require a plaintiff to demonstrate the same elements to establish liability").

[12]To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated . . ., and (2) failure to act despite that knowledge." *D.E.*, 765 F.3d at 269 (citing *S.H.*, 729 F.3d at 265) (emph. omitted.). While "[d]eliberate indifference does not require a showing of personal ill will or animosity toward the disabled person," *id.* (quoting *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (internal quotation marks omitted)), it does require a "deliberate choice, rather than negligence or bureaucratic inaction.," *id.* (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)) (internal quotation marks omitted).

claims. "[T]o establish a violation of [S]ection 504," plaintiffs "must prove that they have been discriminated against – that they were 'excluded from the . . . benefit **due to discrimination solely on the basis of the disability**.'"[13] *Wright*, 2013 WL 4525309, at *13 (quoting *Sellers v. Sch. Bd. of City of Manassas*, Va., 141 F.3d 524, 528 (4th Cir.), 525 U.S. 871 (1998)) (italics added); *see also supra* notes 1 & 2.

Plaintiffs' claims center around defendants' response, or lack thereof, to the alleged bullying and harassment by J.C. and B.C. and the consequences to M.S.'s education, including failure on the part of defendants to accommodate M.S. by separating her from J.C. and B.C. during school hours. In *Wright*, the Court found that although "plaintiffs indicate that M., a fellow classmate, harbored antipathy towards R.W. based on R.W.'s disability," plaintiffs failed to allege that "the conduct of the . . . County Defendants was motivated by **discrimination based on R.W.'s disability**." *Id.* at *14 (emph. added). Similarly, in this case, plaintiffs fail to point to evidence that defendants' challenged actions or inactions were motivated by discrimination based on M.S.'s disability. Indeed, in this case, plaintiffs also fail to point to evidence that actions of B.C. or J.C. were motivated by discrimination based on M.S.'s disability.

Moreover, to the extent that plaintiffs claim defendants were deliberately indifferent to disability-based harassment, *see, e.g., Davis Next Friend LaShonda D. v. Monroe County Bd. of Ed.*, 526 U.S. 629 (1999) (where plaintiff alleged, **under Title IX** of the Education Amendments Act of 1972, that teachers and administrators were deliberately indifferent to student-on-student

---

[13] "By extension, virtually the same standard applies in an action under Title II of the ADA." *Wright*, 2013 WL 4525309, at *13.

sexual harassment at school);[14] *Wright*, 2013 WL 4525309, at *15 (citing *Davis* and other cases), such a claim could not survive summary judgment here. By analogy to *Davis*, courts have found that a school district's deliberate indifference to severe and pervasive harassment of a disabled child by his peers states a claim under Section 504 and Title II of the ADA, when five elements are satisfied: "(1) the child is an individual with a disability; (2) he or she was harassed based on that disability; (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment; (4) the defendant had actual knowledge of the harassment; and (5) the defendant was deliberately indifferent to the harassment." *Id.* at *16 (citing cases). Here, even assuming that plaintiffs were able to point to evidence sufficient to support the other elements,[15] plaintiffs fail to point to evidence sufficient to

---

[14]In language similar to Title II of the ADA and Section 504 of the RA, Title IX provides: "No person in the [U.S.] shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Wright*, 2013 WL 4525309, at *13 (quoting 20 U.S.C. § 1681(a)).

[15]The record indicates that, among other things, defendants attempted to accommodate plaintiffs by separating M.S. and J.C. at the request of M.S.'s mother, except for one or two classes that they shared by necessity because of their respective educational needs and the school schedule. (Joint Appendix ("JA") 77 at 110; JA-113 at 254; JA 257 at 93; JA-264 at 119-20; JA-825; JA-826.) There is a lack of evidence that the students could have been completely separated consistent with the needs of the two students, including their schedules and available classes. For example, J.C. apparently had an Individualized Education Program ("IEP") and M.S. apparently had a Section 504 accommodation. Plaintiffs concede that when "M.S. attempted to leave the building by requesting a placement at the Vo-Tech Program which was out of the building[,] . . . M.S. could not handle the Vo-Tech Program and had to return to the high school and classes shared with J.C." *See* Pls.' Br. 9. Plaintiffs also concede that "defendants permitted M.S. to attend the 'emotional support' class." *Id.* at 10-11. Furthermore, defendants honored plaintiffs' request that M.S. receive homebound instruction. (JA-562 at 90-91.) The facts of this case are thus distinguishable from those in the Title IX *Davis* case where the school board "made no effort whatsoever either to investigate or to put an end to the harassment." *See Davis*, 526 U.S. at 654. Here, there appears to be a lack of evidence sufficient to support the fifth element – that defendants demonstrated **deliberate indifference** to the harassment. *See e.g.*, *D.E.*, 765

indicate the existence of the second element – that M.S. was harassed based on her disability.[16]

To the extent that plaintiffs claim defendants retaliated against them in violation of Section 504, *see* Pls.' Am. Compl. ¶ 54, that claim would not survive the summary judgment stage of the proceedings, even assuming *arguendo* this Court had subject matter jurisdiction (which it does not). In particular, plaintiffs' Amended Complaint alleges that defendants retaliated against plaintiffs through "a self-serving, sham investigation that invaded their privacy by (1) casting mother in a bad light in their investigation report, (2) sending that report to the minor children J.C. and B.C. and (3) to third parties who had no need to know about private details of M.S. and [her sister's] life [sic]." *Id.* ¶ 56. Plaintiffs further allege defendants "took adverse action against" plaintiffs by "suspending and disciplining M.S., [and] by steadfastly refusing to separate M.S. and J.C." *Id.* ¶ 59.

The elements of a retaliation claim under the RA are that: (1) plaintiffs engaged in a protected activity; (2) defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) there was a causal connection between the protected activity and the retaliatory action. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006); *Weixel v. Bd. of Ed. of*

---

F.3d at 269.

[16]When posed with this issue at oral argument, apparently aware of the lack of evidence in the record indicating that the alleged bullying or harassment was based on M.S.'s disability, plaintiffs' counsel responded that claims related to bullying made under the ADA and Section 504, are not required to claim that the bullying was based on the plaintiff's disability. In particular, plaintiffs' counsel argued that, under the ADA and Section 504, "[t]here is liability **whenever** there is a bullying of a disabled person," *see* Tr. Oral Arg. at 78 (emph. added). This, however, ignores the second element set forth above. *See Wright*, 2013 WL 4525309, at *16 (citing cases).

*N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). "A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Id.* (citing *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002)). To establish the requisite causal connection, "a plaintiff usually must prove either (1) an **unusually** suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997)) (emph. added).

Here, even assuming plaintiffs can satisfy the other elements to a retaliation claim, plaintiffs are unable to satisfy the third element – that there was a **causal connection** between the protected activity and the retaliatory action. *See Lauren W.*, 480 F.3d at 267. Plaintiffs fail to point to evidence in the record sufficient to suggest that defendants' actions challenged by plaintiffs as retaliatory were **causally connected** to the alleged protected activity or that defendants would not have taken the same actions even if plaintiffs had not engaged in the protected activity. In other words, plaintiffs are unable to point to sufficient evidence indicating that defendants' actions were taken **in retaliation against** plaintiffs for engaging in protected activity. Plaintiffs have failed to make a showing sufficient to survive a summary judgment motion on the causation element of their retaliation claim. *See, e.g., id.*

### 5. CONCLUSION

Defendants' request to dismiss this case for lack of subject matter jurisdiction is granted due to plaintiffs' failure to satisfy the exhaustion requirement. *See Batchelor*, 759 F.3d at 281.

Furthermore, even assuming *arguendo* that the Court had subject matter jurisdiction over this case, dismissal of this case based on summary judgment in defendants' favor would be warranted.

      An appropriate Order follows.